# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# DELTA DIVISION

**ROSE MARY HAMILTON**                                                               **PLAINTIFF**

**V.**                     **NO. 2:25-CV-00051 BSM-PSH**

**FRANK BISIGNANO, Commissioner of**
**SOCIAL SECURITY ADMINISTRATION**                           **DEFENDANT**

## RECOMMENDED DISPOSITION

This Recommended Disposition (Recommendation) has been sent to United States District Judge Brian S. Miller. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Miller can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

**I.**   **Introduction:**

On July 8, 2020, Rose Mary Hamilton ("Ms. Hamilton") filed a Title II application for disability and disability insurance benefits, alleging that her disability began on May 29, 2020. (Tr. at 13). The application was denied initially and upon reconsideration. On March 18, 2024, an administrative law judge ("ALJ") issued an unfavorable decision, finding that Ms. Hamilton had not been under a disability from

May 29, 2020, through the date of the decision. (Tr. at 13-25). On February 7, 2025, the Appeals Council denied Ms. Hamilton's request for review of the hearing decision. (Tr. at 1-6). The ALJ's decision now stands as the final decision of the Commissioner, and Ms. Hamilton has requested judicial review.

For the reasons stated below, this Court should reverse the ALJ's decision and remand for further review.

## II.   The Commissioner's Decision:

Ms. Hamilton was 61 years-old on the alleged onset date, meaning she fell into the "closely approaching retirement age" category of the Social Security Act ("the Act"). (Tr. at 71). She meets the insured status requirements of the Act through March 31, 2025. (Tr. at 15). The ALJ found that Ms. Hamilton had not engaged in substantial gainful activity since the alleged onset date of May 29, 2020.[1] *Id*. At Step Two, the ALJ found that Ms. Hamilton had the following severe impairments: diabetes mellitus, neuropathy, and obesity. (Tr. at 16).

After finding that Ms. Hamilton's impairments did not meet or equal a Listed

---

[1] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

Impairment (Tr. at 19),[2] the ALJ determined that Ms. Hamilton had the residual functional capacity (RFC) to perform work at the light exertional level, with additional limitations: (1) no more than occasional climbing of stairs, stooping, crouching, bending, kneeling, and crawling; (2) can ambulate on level surfaces, but is precluded from job tasks on terrains within agricultural or construction zones; and (3) no more than occasional use of foot controls and pedals. (Tr. at 20).

At Step Four, the ALJ determined that Ms. Hamilton is capable of performing past relevant work as a cook helper, as actually performed. (Tr. at 25). Therefore, the ALJ found that Ms. Hamilton was not disabled. *Id*.

### III.  Discussion:

   A.  Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> Our review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's

---

[2] 20 C.F.R. Part 404, Subpt. P, App'x 1, Adult Listing of Impairments.

decision; we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

B. Ms. Hamilton's Arguments on Appeal

Ms. Hamilton contends that the evidence supporting the ALJ's decision to deny benefits is less than substantial. Her sole argument is that the ALJ failed to resolve a conflict created by the differences in the RFC, the past work classification by the VE, and Ms. Hamilton's testimony about her past work. The Court finds support for this argument.

1. Summary of Medical Evidence

Ms. Hamilton had diabetes mellitus which resulted in high blood glucose readings over the relevant time-period. She had associated shortness of breath, chest pain, and neuropathy. (Tr. at 492). Ms. Hamilton also had high blood pressure. She went to the emergency room four times for chest pain and high blood pressure, with back pain that radiated into her legs. (Tr. at 481-482, 567-571, 763-765, 776-778).

On May 26, 2021, Dr. Sudhir Kumar, M.D., conducted a consultative evaluation of Ms. Hamilton. (Tr. at 591-596). On exam, Dr. Kumar noted abnormal range of motion of the bilateral hands, knees, ankles, and cervical and lumbar spine. *Id*. Ms. Hamilton was unable to heel-toe walk. *Id*. Dr. Kumar opined that Ms. Hamilton's physical abilities are moderately limited. (Tr. at 596).

On October 11, 2021, Ms. Hamilton saw APRN Stephanie Glenn for a wellness examination. (Tr. at 611-614). Ms. Hamilton was using a rolling walker for ambulation. *Id*. Ms. Glenn noted limited range of motion in the bilateral lower extremities and bilateral lower extremity pain. She prescribed glipizide and twice daily metformin. *Id*.

When Dr. Kumar performed a second consultative examination on February 16, 2022, he also opined that Ms. Hamilton would be moderately limited in physical activities. (Tr. at 654-659).

Ms. Hamilton's treating physician, Dr. S.W. Balke, D.O., submitted a treating

5

source statement dated January 11, 2023. (Tr. at 803-806). She indicated that she had treated Ms. Hamilton 3 to 4 times per month for 8 years. *Id*. Dr. Balke diagnosed diabetes mellitus with neuropathy, high blood pressure, osteoarthritis, GERD, and bilateral carpal tunnel syndrome. *Id*. Dr. Balke wrote that Ms. Hamilton could sit for a total of 4 hours in an 8-hour workday, and she could stand/walk for up to 3 hours in an 8-hour workday (less than light exertional work). (Tr. at 804). She would need an option to elevate her legs at work. *Id*. Dr. Balke said that Ms. Hamilton would likely miss 4 days per month as a result of her impairments. (Tr. at 803).

The two state-agency medical experts reviewed the records at the initial and reconsideration levels of review. (Tr. at 84-86, 98-100). They found that Ms. Hamilton could perform light exertional work, with no postural limitations. *Id*.

   2.  Past relevant work argument

Ms. Hamilton claims that the ALJ erred at Step Four. Ms. Hamilton's past relevant work was as a "cook helper" at Boar's Head, which is unskilled medium exertional work as generally performed, according to the Dictionary of Occupational Titles ("DOT"). DOT 317.687-010; (Tr. at 62). But the VE testified that Ms. Hamilton actually performed the work at the light, rather than medium, exertional level.[3] (Tr. at 64-65). Ms. Hamilton alleges that her testimony and work history

---

[3] The controlling regulation defines light work as requiring the ability to lift no more than twenty

information clearly identified the work she did as a cook's helper as medium work. She testified that she was standing "all the time" at her Boar's Head job, and that she was stooping, kneeling, and crouching for all of her 12-to-14 hour shifts. (Tr. at 37, 280-281, 367). She also mentioned at one point that she had to lift things weighing 50 pounds, but she then testified that she only lifted 10 pounds or less. (Tr. at 65). The RFC was for light work (which does not allow for lifting of 50 pounds) with occasional postural actions. Ms. Hamilton argues that the RFC does not match what she actually did at her past work at Boar's Head, and that she could not return to such work.

The ALJ essentially read the work history report into the record at the hearing, and he stated the following: "you did walk eight hours on that job per day . . . you did stand eight hours [per] day . . . you had to stoop, kneel, grab, and handle objects."[4] (Tr. at 64). The ALJ asked the VE very few questions about the work at Boar's Head, and then he relied on the VE's testimony that Ms. Hamilton actually

---

pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds, a good deal of walking or standing, and involving some pushing and pulling of arm or leg controls when sitting most of the time. 20 CFR § 404.1567. Medium work is defined as lifting or carrying no more than 50 pounds at a time with frequent lifting and carrying of up to 25 pounds, with a good deal of walking or standing. *Id.*

[4] The ALJ did not ask Ms. Hamilton how many hours she did these postural activities, although she said on her work history report that it was 14 hours per day. (Tr. at 280-281).

performed the work at the light level. That contradicts her testimony about the Boar's Head job. And the DOT identifies the work as performed at the medium level. DOT 317.687-010; (Tr. at 25). The ALJ did not recognize the conflict or inquire as to how the VE arrived at his conclusion that the past work was performed at the light level. And the ALJ's assigned RFC for occasional postural work directly contradicts Ms. Hamilton's testimony that she was stooping, kneeling, and crouching for most of her 12-to-14 hours shifts.[5]  (Tr. at 280-281, 367).

      Before relying on VE evidence to support a determination that a claimant is not disabled, the ALJ has an affirmative responsibility to ask about "any possible conflict" between VE testimony and the DOT, and to obtain an explanation for any such conflict. *Renfrow v. Colvin*, 496 F.3d 918, 920-21 (8th Cir. 2007); *Stanton v. Berryhill*, 899 F.3d 555 (8th Cir. 2018) (vocational expert's statement that his opinion was consistent with the DOT and his experience was not a sufficient explanation, because it did not address whether or why the expert's experience provided a basis to overcome an apparent conflict with the DOT) (emphasis added); *Humphrey v. Berryhill*, No. 4:18-cv-190-ACL, 2019 U.S. Dist. LEXIS 50243 *18 (E.D. Mo. March 26, 2019) (in a similar case with a conflict in the reaching

---

[5] Another evidentiary factor that muddies the conflict is Dr. Balke's opinion that Ms. Hamilton could not perform the job requirements of even light work. *(Tr. at 803-806).*

8

requirements for certain jobs, remand was proper in the face of a DOT conflict where the VE provided "no insight into the issue"); *Eldridge v. Berryhill*, No. 3:17-cv-00308-JTR, 2018 U.S. Dist. LEXIS 189576 *3-4 (E.D. Ark., November 6, 2018) (while ALJ asked multiple questions of the VE regarding the reaching conflict, VE testimony still did not provide insight or explanation of conflict).

    Other VEs, in instances where the Court has determined that the conflict was properly resolved, have described their training and education, their personal observation of the jobs in question, the specific kind of activities ***each job actually requires***, and how Social Security manuals and supporting references address the conflict. *Smith v SSA*, No. 3:19-cv-00373-BD, 2020 U.S. Dist. LEXIS 240226 (E.D. Ark. Dec. 22, 2020); *Porter v. Berryhill*, No. 4:17-cv-00072-NKL, 2018 U.S. Dist. LEXIS 37141 (W.D. Mo. March 7, 2018). A more searching inquiry by the ALJ is required in the face of a conflict, and in this case, the VE did not provide sufficient foundation to support his testimony that the Boar's Head work was performed at the light level[6]  (Tr. at 62-66), especially when Ms. Hamilton described her performance as more than light exertional work. The Court is left to wonder how the VE reached

---

[6] All the ALJ said about the VE was that he "recognizes the VE as an authoritative source." (Tr. at 25).

his conclusion.[7]

This is not harmless error, because if the ALJ made an erroneous and unsupported decision at Step Four, he would have had to proceed to Step Five and identify jobs that Ms. Hamilton could perform. He did not do that.

In this case, the ALJ failed to recognize or address the obvious conflict, and therefore, his Step Four analysis was flawed. Reversal is warranted.

### VI.   Conclusion:

For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. The ALJ failed to recognize or resolve a conflict at Step Four.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be REVERSED and the case be REMANDED for further administrative review.

IT IS SO ORDERED this 21st day of August, 2025.

_____
UNITED STATES MAGISTRATE JUDGE

---

[7] An ALJ's failure to "show his work" frustrates meaningful judicial review. *Smajic v. Berryhill*, No. 4:17-CV-02474-SNLJ, 2019 U.S. Dist. LEXIS 6240 at *11-12 (E.D. Mo. Jan. 14, 2019); *Guess v. Kijakazi*, No. 4:20-CV-00887-JTR, 2021 U.S. Dist. LEXIS 241708 at *9, n.6 (E.D. Ark. Dec. 17, 2021).